UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No. 21-20756
                                        Honorable Judith E. Levy

v.

JAMAR LEE-STINSON

        Defendant.

_____/

## **RENEWED MOTION FOR BOND WITH CONDITIONS**

Jamar Lee-Stinson, through counsel Daniel S. Dena, seeks release on bond with conditions pursuant to the Bail Reform Act, 18 U.S.C. § 3142. In support of this motion, he states the following:

(1) A grand jury issued a one-count indictment alleging that Mr. Lee-Stinson committed the following federal offense: one count of being a felon in possession of ammunition, 18 U.S.C. § 922(g).

(2) At Mr. Lee-Stinson's initial appearance, the government moved for his detention pending trial, and on December 7, 2021, Magistrate Judge Patti ordered Mr. Lee-Stinson detained.

(3) He now seeks review of that detention order.

1

(4) Mr. Lee-Stinson is eighteen years old, and a life-long resident of Detroit. His grandparents, siblings, and children all reside in Detroit, Michigan. At the time of his arrest, he was gainfully employed at FedEx and providing care for his child. Mr. Lee-Stinson is confident he can return to gainful employment upon his release, and he will not be returning to the same address where he was living when arrested.

(5) At no cost, there is outpatient treatment and foster care services available to Mr. Lee-Stinson through the Young Adult Voluntary Foster Care (YAVFC) program, should he be released on bond. Undersigned counsel has communicated with Mr. Lee-Stinson's former MDHHS caseworker, who has confirmed that Mr. Lee-Stinson is eligible for services once he is released and employed.

(6) As more fully discussed below, this Court can impose a number of restrictive condition options to neutralize any potential threat he poses to the community and to reasonably ensure he appears at all future proceedings. Those conditions may include:

- Home detention with GPS monitoring or home incarceration (*i.e.*, 24-hour lockdown);

- A third-party custodian "who agrees to assume supervision and to report any violation of a release condition to the court," 18 U.S.C. § 3142(c)(1)(B)(i);

- Avoid contact with any alleged victims or potential witnesses;

- Participate in the YAVFC program and its accompanying mental health or substance abuse treatment services;

- Regular reporting, to U.S. Pretrial Services; and

- Refrain from possessing a firearm.

(7) The government does not concur with Mr. Lee-Stinson's motion for bond.

## CONCLUSION

The conditions of release proposed in this motion will reasonably assure Mr. Lee-Stinson's appearance at future proceedings and the safety of the community. This Court should therefore grant Mr. Lee-Stinson's motion for bond with conditions.

    Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/Daniel S. Dena
Attorney for Jamar Lee-Stinson
Federal Community Defender
613 Abbott St., Suite 500
Detroit, MI 48226
Phone: 313-967-5834

Dated:  June 3, 2022

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                       Case No. 21-20756
                                                 Honorable Judith E. Levy

v.

JAMAR LEE-STINSON,

        Defendant.
_____/

**BRIEF IN SUPPORT OF JAMAR LEE-STINSON'S
<u>RENEWED MOTION FOR BOND</u>**

Most children are lucky enough to never have seen the foster care system. Children who do have contact with Michigan Department of Health and Human Services (MDHHS) do so often because of severe neglect or abuse by the ones responsible for caring and loving them. Jamar Lee-Stinson, 18, has had an open file with MDHHS since the age of two years old. His entire life has been a series of moving from one family member to another, and doing his best to cope with the neglect and physical abuse that he suffered at the hands of his biological parents. MDHHS has offered him helpful services before, including mental health counseling and education services. His contact with MDHHS has been to his benefit. Fortunately for Jamar, he

4

is still eligible for many services through MDHHS, and the only thing holding him back from receiving continued foster care services is his current detention.

Jamar is currently detained at Livingston County Jail. He moves for release on unsecured bond with special conditions. As detailed below, defense counsel has found a local outpatient program that can help Jamar receive continued foster care with oversight from a caseworker, along with mental health and substance abuse treatment, foster care payments, healthcare coverage, and help developing independent living skills. Although Jamar faces a serious charge, he is still presumed innocent, and there are conditions this Court can set to ensure his future appearance in court and the safety of the community.

## I.  What YAVFC can offer

Young Adult Voluntary Foster Care (YAVFC) is run through the Michigan Department of Health and Human Services (MDHHS). YAVFC is—at heart—an extension of foster care up until the age of 21, and offers a safety net of supportive services and financial benefits during the critical transition into adulthood, including:

- Extension of foster care payments in the amount of approximately $297.78 per month
- Continued oversight and guidance by a caseworker for additional support
- Counseling services for mental health and for substance abuse treatment
- Continued health care coverage
- Training in independent living skills

To be eligible, a candidate must be between 18 and 21 years old, and enrolled in college (at least part-time), employed (at least 80 hours a month), or volunteering for a

community organization (again, at least 80 hours a month). Candidates can reside with a foster parent, family member, or any other supportive adult home. Jamar is 18 years old. He has been in active communication with his former case worker Ms. Leticia Johnson, who confirmed to undersigned counsel that Jamar could participate in the program as soon as he is released on bond and employed or volunteering.

## II. LEGAL STANDARD

"In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act ("BRA") establishes when to deviate from that norm: only when no "condition or combination of conditions . . . will reasonably assure the appearance of [the accused] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Except when the defendant is charged with a handful of offenses, the government bears the burden to show by a preponderance of the evidence that there is a risk the person will flee or, by clear and convincing evidence, that he is a danger to other people or the community and no condition or combination of conditions will adequately protect them. *Id.* § 3142(e); *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

To help judges make that determination, Congress has identified four relevant considerations: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release. *Id.* § 3142(g).

6

Relevant personal characteristics of the accused include: "physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and whether the person was on court-ordered supervision at the time of the arrest. *Id.* § 3142(g)(3).

Even if the Court determines under § 3142(c) that an *unsecured* bond is not sufficient, the Court "shall order" release subject to "the least restrictive further conditions" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors non-detention.").

When a party appeals a magistrate judge's determination regarding pretrial detention pursuant to 18 U.S.C. § 3145(b), the district court gives fresh review to the weighing of these factors. *United States v. Jimenez-Lopez*, No. 18-MJ-30320, 2018 WL 2979692, at *2 (E.D. Mich. June 14, 2018).

## ARGUMENT

I. **Mr. Lee-Stinson should be released on bond with conditions**

    A. **The 3142(g) factors support his release with conditions**

      a.  The nature and circumstances of the offense charged

Jamar is charged with being a felon in possession of ammunition. The alleged offense occurred on November 8, 2021. It is alleged that Jamar walked into a BP gas station in Detroit. While in the store, three men (one armed with a firearm) walk into the store. They exchange glances with Jamar. Jamar leaves the gas station for his car, and the three men leave the store shortly after and walk to their vehicle. One of the three individuals pull out a firearm and cocks it. He looks in Jamar's direction.



While Jamar's vehicle is driving away, Jamar is alleged to have fired shots from the car, briefly exiting the vehicle to fire more shots, before reentering his vehicle and leaving the scene. No one was hit or injured.

When law enforcement executed a search warrant at his residence on December 3, 2021, two firearms were found. Jamar lived at that residence with his cousin, girlfriend, and child, all present when law enforcement conducted the search. At the time, Jamar was on HYTA probation for carrying a concealed weapon.

8

a. The history and characteristics of the person

Jamar's history and characteristics favor release. First, as noted above, Jamar has strong family and community ties. His grandparents, siblings, children, and close family all live in or near Detroit. Jamar is a lifelong Detroiter and has lived in or near Detroit his whole life.

Jamar will not be returning to his former living situation, nor to the home where firearms were found. If released, he hopes to reside with his maternal grandmother, Kay Lee. He has lived with her before with no issue. At that home lives Ms. Lee's fiancé, Robert Bradley, her son Jermaine, and her grandson Jacarie. Jacarie is Jamar's younger brother. Ms. Lee and Mr. Bradley have offered to serve as third-party custodians for Jamar, and have promised to undersigned counsel that they will not only ensure his future court appearances, but that they will be the first to contact Jamar's pretrial service officer should Jamar not comply with any conditions of his release.

Jamar has the support of family. (Ex. A, Letters of Support) His grandmother, Kay Lee, and her fiancé, Robert Bradley, assure the Court that they support Jamar, but that also as a third-party custodian, they "won't hesitate to call the authority" should Jamar stray from compliance. (Id.) Ms. Lee reassures this Court that Jamar has a strong support system within the family.

Before his arrest, Jamar had full-time employment with FedEx. Although he lost that job as a result of his detention, he is hopeful that he can regain employment there upon release. If not at FedEx, Jamar is determined to find gainful employment

9

immediately upon release so that he may qualify for participation in YAVFC. His length of residence in the city, family, and employment history all favor release.

Jamar has a limited history of any drug use, and only reported using marijuana occasionally. If released, he is committed to remaining sober and will comply with any urinalysis testing and recommendations for substance abuse treatment through pretrial services or through YAVFC.

Jamar has very limited criminal history: when he was 17, he was convicted of carrying a concealed weapon. Jamar pled guilty on September 30, 2021, and he was sentenced under the Holmes Youthful Trainee Act (HYTA) to one year of probation on November 15, 2021. He has no other juvenile or adult history, and has no history of failing to appear for court dates related to that conviction.

> b. The weight of the evidence against the person and nature and seriousness of danger posed by release

The Court should consider "the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010).

As alleged, there is some evidence that Jamar poses a threat to the community. It is alleged that Jamar fired shots at three persons, at least one of whom had brandished a firearm and cocked it while looking at Jamar's direction. While these facts would nonetheless never excuse a shootout at a gas station, they do not suggest that Jamar is

10

a danger to the community at large, and—if true—suggest that Jamar overreacted to protect his own life.

The alleged use of a firearm is serious, but conditions can be imposed that would mitigate concerns for the community. For one, Jamar would be released to live with grandparents, and not to the home where firearms were recovered. Second, his family could serve as third-party custodians to ensure he remains in compliance with bond. The Court could impose home detention to ensure that Jamar's exact whereabouts are meticulously monitored by Pretrial Services and that he remains at his grandparents' home whenever he is not working or attending counseling. Last, Jamar fully intends to participate in YAVFC, which will place him under the supervision and guidance of a MDHHS caseworker. That caseworker will provide him resources for regular mental health and substance abuse counseling, and help Jamar foster independent living skills. This comprehensive combination of resources will encourage Jamar to remain on the right track and minimize any threat that he may pose to the community.

### B. There are conditions reasonably to assure Mr. Lee-Stinson's appearance and the safety of the community

A defendant cannot be detained "unless a finding is made that no release conditions will 'reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *Dominguez*, 783 F.2d at 707 (quoting § 3142(e)). Here, the government cannot its high burden of proving by clear and convincing evidence that there are *no* release conditions that will reasonably assure the safety of the community.

*See id.* at 708 n.8. The government also cannot show by a preponderance of the evidence that there are no absolutely conditions that would reasonably assure Mr. Lee-Stinson's appearance in court.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Lee-Stinson's appearance in court and the safety of the community:

- **Third Party Custodian:** Place Mr. Lee-Stinson in the custody of Kay Lee or Robert Bradley, who will agree "to assume supervision and to report any violation of a release condition to the court." 18 U.S.C. § 3142(c)(1)(B)(i). Ms. Lee is Mr. Lee-Stinson's maternal grandmother, and Mr. Bradley is her fiancé.

- **Home Detention or Home Incarceration:** Mr. Lee-Stinson must submit to home detention, which allows him to leave only for employment, schooling, medical appointments, and religious services. In the alternative, this Court can impose home incarceration, which would require Mr. Lee-Stinson to submit to 24-hour lockdown at his grandmother's home. Although this is not preferable given that Mr. Lee-Stinson needs to work to participate in YAVFC, he is willing to abide by this condition if ordered.

- **Employment:** Maintain or actively seek employment or enroll in educational programming.

- **YAVFC**: Participate in the Young Adult Voluntary Foster Care program, and participate in all mental health, substance abuse, or other counseling services recommended by his caseworker or by Pretrial Services

- **Restrict Contacts:** Avoid all contact with the alleged victim of the crime and with any potential witnesses who may testify about the offense.

- **Prohibit the Possession of Weapons:** Mr. Lee-Stinson will not be allowed to possess any firearms, destructive devices, or other dangerous weapons.

12

## CONCLUSION

The Bail Reform Act and the factors under 18 U.S.C. Sec. 3142(g) favor Mr. Lee-Stinson's release, and the government cannot show that there are no conditions or combination of conditions that will *reasonably* assure the safety of the community and Mr. Lee-Stinson's future appearance at these proceedings. Mr. Lee-Stinson therefore requests release on bond with conditions.

Respectfully Submitted,

**FEDERAL COMMUNITY DEFENDER**

s/Daniel S. Dena
Attorney for Jamar Lee-Stinson
Federal Community Defender
613 Abbott St., Suite 500
Detroit, MI 48226
Phone: 313-967-5542

Dated: June 3, 2022

## CERTIFICATE OF SERVICE

Counsel certifies that on the above date, the foregoing paper was filed with the clerk of the Court using the ECF system, which will send notification to opposing counsel.

        Respectfully Submitted,

        **FEDERAL COMMUNITY DEFENDER**

        s/Daniel S. Dena
        Attorney for Jamar Lee-Stinson
        613 Abbott St., Suite 500
        Detroit, MI 48226
        Phone: 313-967-5542

Dated:  June 3, 2022